**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| CLAUDIA OCORO, ISRAEL ROSALES, | § | |
| DIANA ALVARADO HARRIS, | § | |
| CYNTHIA WOODS JONES, | § | |
| GALE JONES, CECILIA BUNNELL, | § | |
| TIFFANY BUNNELL, ELIZABETH | § | |
| LEDESMA, ANTHONY LEDESMA | § | |
| CARLENE SAELG, MARLENE | § | |
| ANDERSON, JACQUELINE ANTEAU, | § | |
| KIM ARENDT, BRUCE BARTELT, | § | CIVIL ACTION NO. 5:16-cv-1278 |
| DEVINE BATES, TIM BAUER, ANGIE | § | |
| SCHLECHTER, VI BECKER, JESSICA | § | |
| BROWER, JUSTIN WILLIAM BROWN, | § | |
| RICHARD BUCKLEY, TRINADH | § | |
| BYLIPYUDI, DANIEL CALLAWAY, | § | |
| DENA CASTELLO, | § | |
| ROBERT JANESH, KUM-LOK CHIA, | § | |
| ROBERT CLAYPOOLE, SHAWNNA | § | |
| CONNER, SHERILYN CORREA, | § | |
| ROBERT CORREA, JOAN COVER, | § | |
| PAMELA DENNY, LOUIS ENGLISH | § | |
| GENEVIEVE EDWARDS, JAMES | § | |
| FAJARDO, JAN FAVORITE, JOE | § | |
| FILIPPO, AGNES FLORENDO, KELLY | § | |
| FLOYD, KATHY FUENTES, | § | |
| CUAHUTEMOC FUENTES, JOSEPH | § | |
| GEBHARDT, CYNTHIA GEBHARDT, | § | |
| MARY GERHART, | § | |
| SUSAN GLASS, DOUG GLENN, | § | |
| VICTOR GUTIERREZ, SUSAN | § | |
| HARBOLT, MARK HARBOLT, CHRIS | § | |
| HEPBURN, DEBE HICKMAN, | § | |
| JUDY HUNTER, GREGORY HUNTER, | § | |
| KELLI KAESTLER, HOWARD KINSEY, | § | |
| SHERRIE KINSEY, KENNETH | § | |
| KLAPCUNIAK, DAWN KLAPCUNIAK, | § | |
| TAMMY KNUTSON, | § | |
| KIRK KREMPEL, TAMARA KURTZ, | § | |
| LIANA KUTEJOVA, HEATHER LE VINE | § | |
| SHARON LOUROS, LUCY MAHONEY | § | |
| HAROLD MAHONEY, WENDY | § | |
| MARTIN, BRIAN MARTIN, ELLEN | § | |
| MENTER, WILLIAM MENTER, | § | |

NICHOLE MOLLICA, ANDY MONSON §
MARGARET MONSON, DONNA §
MORRIS, CINDY MORRIS, BARBARA §
MOWERY, SHEILA MULLINS-BRILL, §
MICHAEL NERI, KAREN FURLOW, §
BRIDGET NEWSOME, CHARLOTTE §
CHRISTINE NOONAN, DARYL §
NOONAN, JEAN NORTON, BRIAN §
O'NEAL, ON BEHALF OF LESLEY §
O'NEAL, DIANE OTTOLENGHI §
JOHNNNIE PARKER, JOHNETTE §
PARMELEE, JACK ACKER, HARI §
PATEL, JEN PIGG, DUANE VADNAIS, §
KNICOLE PORTER, STACEY PRICE- §
BROWN, LINDA QUELET, TINA §
RASALLA, TONY RASALLA, CHERYL §
RICH, KRISTY RITZ, ROBERT RITZ, §
BARBARA RODRIGUEZ, IVAN §
RODRIGUEZ, DIEGO RODRIGUEZ, §
SUSAN ROGGE, MARTINA ROLEN- §
TORRES, JILL ROLEN-TORRES, LISA §
CARILLO ROMEO, FRANCES BURKE, §
LIZ SCEARCE, JIM SCEARCE, §
VICKIE SCHACHTER, §
SHAWN SCHNOOR, JORIE SCULL, §
SHERRY WATERS SETZER, BROOKS §
SILVA, VICKI SIMMONS, DAVID §
SISNETSKY, CARLA STRAND, JOE §
STRAND, KAREN SUING, JOSHUA §
TAYLOR, CAROL THOMAS, SCOTT §
TRAVIS, ANNE TRAVIS, SUZANNE §
TUSKEY, LINDA VAN ORSDOL, §
SUSAN VESEL, MICHAEL VORONKOV, §
JEMILA WELDENHAWARYAT, KASSA §
EDEN, MICHELLE WESTSTEYN, §
PHILLIP WHITE, JANET WILLISON, §
CHARLES WILLISON, LINDA WOODS, §
GLENWOOD YOUNG, SHARON §
ZAKREWSKI, and MARK §
ZAKREWSKI, NICOLE HEPBURN §
§
§
§
§
§
Plaintiffs, §

| | |
|---|---|
| | § |
| v. | § |
| | § |
| | § |
| ARMANDO MONTELONGO JR., | § |
| REAL ESTATE TRAINING | § |
| INTERNATIONAL, LLC, | § |
| PERFORMANCE ADVANTAGE | § |
| GROUP, INC., LICENSE BRANDING, | § |
| LLC. | § |
| | § |
| Defendants. | § |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, PLAINTIFFS CLAUDIA OCORO, ISRAEL ROSALES, DIANA ALVARADO HARRIS, CYNTHIA WOODS JONES, GALE JONES, CECILIA BUNNELL, TIFFANY BUNNELL, ELIZABETH LEDESMA, ANTHONY LEDESMA CARLENE SAELG, MARLENE ANDERSON, JACQUELINE ANTEAU, KIM ARENDT, BRUCE BARTELT, DEVINE BATES, TIM BAUER, ANGIE SCHLECHTER, VI BECKER, JESSICA BROWER, JUSTIN WILLIAM BROWN, RICHARD BUCKLEY, TRINADH BYLIPYUDI, DANIEL CALLAWAY, DENA CASTELLO, ROBERT JANESH, KUM-LOK CHIA, ROBERT CLAYPOOLE, SHAWNNA CONNER, SHERILYN CORREA, ROBERT CORREA, JOAN COVER, PAMELA DENNY, LOUIS ENGLISH, GENEVIEVE EDWARDS, JAMES FAJARDO, JAN FAVORITE, JOE FILIPPO, AGNES FLORENDO, KELLY FLOYD, KATHY FUENTES, CUAHUTEMOC FUENTES, JOSEPH GEBHARDT, CYNTHIA GEBHARDT, MARY GERHART, SUSAN GLASS, DOUG GLENN, VICTOR GUTIERREZ, SUSAN HARBOLT, MARK HARBOLT, CHRIS HEPBURN, DEBE HICKMAN, JUDY HUNTER, GREGORY HUNTER, KELLI KAESTLER,

HOWARD KINSEY, SHERRIE KINSEY, KENNETH KLAPCUNIAK, DAWN KLAPCUNIAK, TAMMY KNUTSON, KIRK KREMPEL, TAMARA KURTZ, LIANA KUTEJOVA, HEATHER LE VINE, SHARON LOUROS, LUCY MAHONEY, HAROLD MAHONEY, WENDY MARTIN, BRIAN MARTIN, ELLEN MENTER, WILLIAM MENTER, NICHOLE MOLLICA, ANDY MONSON MARGARET MONSON, DONNA MORRIS, CINDY MORRIS, BARBARA MOWERY, SHEILA MULLINS-BRILL, MICHAEL NERI, KAREN FURLOW, BRIDGET NEWSOME, CHARLOTTE CHRISTINE NOONAN, DARYL NOONAN, JEAN NORTON, BRIAN O'NEAL, ON BEHALF OF LESLEY O'NEAL, DIANE OTTOLENGHI JOHNNNIE PARKER, JOHNETTE PARMELEE, JACK ACKER, HARI PATEL, JEN PIGG, DUANE VADNAIS, KNICOLE PORTER, STACEY PRICE-BROWN, LINDA QUELET, TINA RASALLA, TONY RASALLA, CHERYL RICH, KRISTY RITZ, ROBERT RITZ, BARBARA RODRIGUEZ, IVAN RODRIGUEZ, DIEGO RODRIGUEZ, SUSAN ROGGE, MARTINA ROLEN-TORRES, JILL ROLEN-TORRES, LISA CARILLO ROMEO, FRANCES BURKE, LIZ SCEARCE, JIM SCEARCE, VICKIE SCHACHTER, SHAWN SCHNOOR, JORIE SCULL, SHERRY WATERS SETZER, BROOKS SILVA, VICKI SIMMONS, DAVID SISNETSKY, CARLA STRAND, JOE STRAND, KAREN SUING, JOSHUA TAYLOR, CAROL THOMAS, SCOTT TRAVIS, ANNE TRAVIS, SUZANNE TUSKEY, LINDA VAN ORSDOL, SUSAN VESEL, MICHAEL VORONKOV, JEMILA WELDENHAWARYAT, KASSA EDEN, MICHELLE WESTSTEYN, PHILLIP WHITE, JANET WILLISON, CHARLES WILLISON, LINDA WOODS, GLENWOOD YOUNG, SHARON ZAKREWSKI, MARK

ZAKREWSKI, and NICOLE HEPBURN

("Plaintiffs"), and hereby file this Original Complaint against Defendants Armando Montelongo Jr. ("Montelongo"), Real Estate Training International, LLC ("RETI"), Performance Advantage Group, Inc. ("PAG"), and License Branding, LLC ("LB") (collectively, "Defendants") and for their causes of action herein would respectfully show the Court as follows:

**I.**

**INTRODUCTION**

1. Montelongo has made hundreds of millions of dollars selling real estate education programs to Americans who long for financial security in uncertain times. Montelongo styles himself as the "epitome of the American dream." For his students, however, he is a nightmare.

2. Acting through his many corporate shells, Montelongo sells worthless, dangerous, and unlawful advice about real estate investing; takes advantage of the students' trust to loot their accounts; sells them properties at inflated prices without disclosing his stake in them; encourages them to pursue their real estate investments using his allies, who also victimize the students; and harasses those who dare to speak out against him.

3. By this action, 138 former students—part of a still larger group of 197, the rest of whom are pursuing their claims in arbitration—now seek to remedy the financial devastation Montelongo's predation has wreaked.

**II.**

**JURISDICTION**

**A. Subject Matter Jurisdiction**

4. This court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964, which gives those injured by RICO violations the right to sue in any

appropriate United States district court. Because Defendants reside and have their corporate headquarters here in San Antonio, Texas, make all decisions in San Antonio, Texas, and approve all marketing and issue instructions to seminar teachers and agents selling the seminars in San Antonio, Texas, this honorable court has subject matter jurisdiction over all Defendants.

**B. Personal Jurisdiction**

5. This court has general personal jurisdiction over Montelongo because he is a resident of this state and of this federal district, and over all other Defendants identified in this complaint because they are headquartered and do extensive business in this federal district in Texas as referenced above.

## III.

## VENUE

6. Venue is proper in the San Antonio Division of this court. Under 28 U.S.C. § 1391, Montelongo is an individual, and Defendants RETI, PAG, and LB are corporations, that "reside" in the Western District of Texas and, more particularly, in the City of San Antonio, Texas. Montelongo maintains his residence in San Antonio, while Defendants RETI, PAG, and LB maintain and operate their headquarters within the City of San Antonio, Texas, employ officers and personnel at the Defendants' headquarters in that city, and conduct extensive business activities and take decisions within this judicial district and division. Additionally, the actions, omissions, events, and violations giving rise to the claims asserted herein occurred within this judicial district and division.

## IV.

## PARTIES

## PLAINTIFFS

7. Plaintiffs are current or former students of Defendants who reside in and around the San Antonio, Texas area, or other areas of the United States. The plaintiffs are as follows:

A. Plaintiff Claudia Ocoro is a resident of Houston, Texas.

B. Plaintiff Israel Rosales is a resident of Houston, Texas.

C. Plaintiff Anthony Ledesma is a resident of Garland, Texas.

D. Plaintiff Carlene Saelg is a resident of Allen, Texas.

E. Plaintiff Diana Alvarado Harris is a resident of Corpus Christi, Texas.

F. Plaintiff Cynthia Woods Jones is a resident of Pflugerville, Texas.

G. Plaintiff Gale Jones is a resident of Pflugerville, Texas.

H. Plaintiff Cecilia Bunnell is a resident of Montgomery, Texas.

I. Plaintiff Tiffany Bunnell is a resident of Montgomery, Texas.

J. Plaintiff Elizabeth Ledesma is a resident of Garland, Texas.

K. Plaintiff Nicole Hepburn is a resident of Selinsgrove, Pennsylvania.

L. Plaintiff Mark Zakrezewski is a resident of Mokena, Illinois.

M. Plaintiff Marlene Anderson is a resident of Slayton, Minnesota.

N. Plaintiff Jacqueline Anteau is a resident of Tarpon Springs, Florida.

O. Plaintiff Kim Arendt is a resident of Santa Maria, California.

P. Plaintiff Bruce Bartelt is a resident of Phoenix, Arizona.

Q. Plaintiff Devin Bates is a resident of Port Jervis, New York.

R. Plaintiff Tim Bauer is a resident of St. Louis, Missouri.

S. Plaintiff Angie Schlechter is a resident of St. Louis, Missouri.

T. Plaintiff Vi Becker is a resident of Arvada, Colorado.

U. Plaintiff Jessica Brower is a resident of Fallon, Nevada.

V. Plaintiff Justin William Brown is a resident of Lynn, Massachusetts.

W. Plaintiff Richard Buckley is a resident of West Lafayette, Indiana.

X. Plaintiff Trinadh Bylipudi is a resident of Edison, New Jersey.

Y. Plaintiff Daniel Callaway is a resident of Carmel Valley, California.

Z. Plaintiff Dena Castello is a resident of Matawan, New Jersey.

AA. Plaintiff Robert Janesh is a resident of Matawan, New Jersey.

BB. Plaintiff Kum-Lok Chia is a resident of Kernersville, North Carolina.

CC. Plaintiff Robert Claypoole is a resident of Poland, Ohio.

DD. Plaintiff Shawnna Conner a resident of Carrollton, Missouri.

EE. Plaintiff Sherilyn Correa is a resident of Culver City, California.

FF. Plaintiff Robert Correa is a resident of Culver City, California.

GG. Plaintiff Joan Cover is a resident of Winsted, Connecticut.

HH. Plaintiff Pamela Denny is a resident of Las Vegas, Nevada.

II. Plaintiff Louis English is a resident of San Pedro, California.

JJ. Plaintiff Genevieve Edwards is a resident of Poway, California.

KK. Plaintiff James Fajardo is a resident of Avondale, Arizona.

LL. Plaintiff Jan Favorite is a resident of Cornville, Arizona.

MM. Plaintiff Joe Filippo is a resident of Oklahoma City, Oklahoma.

NN. Plaintiff Agnes Florendo is a resident of San Jose, California.

OO. Plaintiff Kelly Floyd is a resident of Joliet, Illinois.

PP. Plaintiff Kathy Fuentes is a resident of Lawrenceville, Georgia.

QQ. Plaintiff Cuauhtemoc Fuentes is a resident of Lawrenceville, Georgia.

RR. Plaintiff Joseph Gebhardt is a resident of Beverly, Massachusetts.

SS. Plaintiff Mary Gerhart is a resident of Denver, Colorado.

TT. Plaintiff Susan Glass is a resident of Mesa, Arizona.

UU. Plaintiff Doug Glenn is a resident of Enid, Oklahoma.

VV. Plaintiff Victor Gutierrez is a resident of Norwalk, California.

WW. Plaintiff Susan Harbolt is a resident of Vacaville, California.

XX. Plaintiff Mark Harbolt is a resident of Vacaville, California.

YY. Plaintiff Chris Hepburn is a resident of Selinsgrove, Pennsylvania.

ZZ. Plaintiff Debe Hickman is a resident of Sun City, Arizona.

AAA. Plaintiff Judy Hunter is a resident of Concord, California.

BBB. Plaintiff Gregory Hunter is a resident of Concord, California.

CCC. Plaintiff Kelli Kaestler is a resident of East Peoria, Illinois.

DDD. Plaintiff Howard Kinsey is a resident of Newtonville, New Jersey.

EEE. Plaintiff Sherrie Kinsey is a resident of Newtonville, New Jersey.

FFF. Plaintiff Kenneth Klapcuniak is a resident of Newark, Delaware.

GGG. Plaintiff Dawn Klapcuniak is a resident of Newark, Delaware.

HHH. Plaintiff Sharon Zakrewski is a resident of Mokena, Illinois.

III. Plaintiff Tammy Knutson is a resident of Hanford, California.

JJJ. Plaintiff Kirk Krempel is a resident of Elkhorn, Wisconsin.

KKK. Plaintiff Tamara Kurtz is a resident of Anaheim, California.

LLL. Plaintiff Liana Kutejova is a resident of Vracov, Czech Republic.

MMM. Plaintiff Heather Le Vine is a resident of Harrisburg, North Carolina.

NNN. Plaintiff Sharon Louros is a resident of Apache Junction, Arizona.

OOO. Plaintiff Lucy Mahoney is a resident of Beebe, Arkansas.

PPP. Plaintiff Harold Mahoney is a resident of Beebe, Arkansas.

QQQ. Plaintiff Wendy Martin is a resident of McDonald, Pennsylvania.

RRR. Plaintiff Brian Martin is a resident of McDonald, Pennsylvania.

SSS. Plaintiff Ellen Menter is a resident of Camden, New York.

TTT. Plaintiff William Menter is a resident of Camden, New York.

UUU. Plaintiff Nichole Mollica is a resident of Ooltewah, Tennessee.

VVV. Plaintiff Andy Monson is a resident of Pleasant Grove, Utah.

WWW. Plaintiff Margaret Monson is a resident of Pleasant Grove, Utah.

XXX. Plaintiff Donna Morris is a resident of Mesa, Arizona.

YYY. Plaintiff Cindy Morris is a resident of Mesa, Arizona.

ZZZ. Plaintiff Barbara Mowery is a resident of York Springs, Pennsylvania.

AAAA. Plaintiff Sheila Mullins-Brill is a resident of Shartlesville, Pennsylvania.

BBBB. Plaintiff Michael Neri is a resident of Glendora, California.

CCCC. Plaintiff Karen Furlow is a resident of Glendora, California.

DDDD. Plaintiff Bridget Newsome is a resident of Aldan, Pennsylvania.

EEEE. Plaintiff Charlotte Christine Noonan is a resident of Lakeland, Florida.

FFFF. Plaintiff Daryl Noonan is a resident of Lakeland, Florida.

GGGG. Plaintiff Jean Norton is a resident of Austin, Texas.

HHHH. Plaintiff Brian O'Neal, on behalf of Lesley O'Neal, is a resident of Santa Monica, California.

IIII. Plaintiff Diane Ottolenghi is a resident of Mansfield, Ohio.

JJJJ. Plaintiff Johnnie Parker is a resident of Leighton, Pennsylvania.

KKKK. Plaintiff Johnette Parmelee is a resident of Caledonia, New York.

LLLL. Plaintiff John Acker is a resident of Caledonia, New York.

MMMM. Plaintiff Hari Patel is a resident of Hoffman Estates, Illinois.

NNNN. Plaintiff Jen Pigg is a resident of Edgewater, Florida.

OOOO. Plaintiff Duane Vadnais is a resident of Edgewater, Florida.

PPPP. Plaintiff Knicole Porter is a resident of Las Vegas, Nevada.

QQQQ. Plaintiff Stacey Price-Brown is a resident of Forest Park, Georgia.

RRRR. Plaintiff Linda Quelet is a resident of Bel Air, Maryland.

SSSS. Plaintiff Tina Rasalla is a resident of Scranton, Pennsylvania.

TTTT. Plaintiff Tony Rasalla is a resident of Scranton, Pennsylvania.

UUUU. Plaintiff Cheryl Rich is a resident of Attleboro, Massachusetts.

VVVV. Plaintiff Kristy Ritz is a resident of Kearney, Missouri.

WWWW. Plaintiff Robert Ritz is a resident of Kearney, Missouri.

XXXX. Plaintiff Barbara Rodriguez is a resident of Gardena, California.

YYYY. Plaintiff Ivan Rodriguez is a resident of Gardena, California.

ZZZZ. Plaintiff Diego Rodriguez is a resident of Greenacres, Florida.

AAAAA. Plaintiff Susan Rogge is a resident of Phoenix, Arizona.

BBBBB. Plaintiff Martina Rolen-Torres is a resident of Fresno, California.

CCCCC. Plaintiff Jill Rolen-Torres is a resident of Fresno, California.

DDDDD. Plaintiff Lisa Carillo Romeo is a resident of Parlin, Colorado.

EEEEE. Plaintiff Frances Burke is a resident of Parlin, Colorado.

FFFFF. Plaintiff Liz Scearce is a resident of Memphis, Tennessee.

GGGGG. Plaintiff Jim Scearce is a resident of Memphis, Tennessee.

HHHHH. Plaintiff Vickie Schachter is a resident of Tarpon Springs, Florida.

IIIII. Plaintiff Shawn Schnoor is a resident of Mountain Home, Arkansas.

JJJJJ. Plaintiff Jorie Scull is a resident of Danville, California.

KKKKK. Plaintiff Sherry Waters Setzer is a resident of Gastonia, North Carolina.

LLLLL. Plaintiff Brooks Silva is a resident of Elizabeth, New Jersey.

MMMMM. Plaintiff Vicki Simmons is a resident of Moore, Oklahoma.

NNNNN. Plaintiff David Sisnetsky is a resident of Jackson, New Jersey.

OOOOO. Plaintiff Carla Strand is a resident of Mesa, Arizona.

PPPPP. Plaintiff Joe Strand is a resident of Mesa, Arizona.

QQQQQ. Plaintiff Karen Suing is a resident of Vail, Colorado.

RRRRR. Plaintiff Joshua Taylor is a resident of Peoria, Arizona.

SSSSS. Plaintiff Carol Thomas is a resident of Tucson, Arizona.

TTTTT. Plaintiff Scott Travis is a resident of Henderson, Nevada.

UUUUU. Plaintiff Anne Travis is a resident of Henderson, Nevada.

VVVVV. Plaintiff Suzanne Tuskey is a resident of Palmdale, California.

WWWWW. Plaintiff Linda Van Orsdol is a resident of Littleton, Colorado.

XXXXX. Plaintiff Susan Vesel is a resident of Cortaro, Arizona.

YYYYY. Plaintiff Michael Voronkov is a resident of San Diego, California.

ZZZZZ. Plaintiff Jemila Weldenhawaryat is a resident of Manassas Park, Virginia.

AAAAAA. Plaintiff Kassa Eden is a resident of Manassas Park, Virginia.

BBBBBB. Plaintiff Michelle Weststeyn is a resident of Fairview, Tennessee.

CCCCCC. Plaintiff Phillip White is a resident of Newberg, Oregon.

DDDDDD. Plaintiff Janet Willison is a resident of Joliet, Illinois.

EEEEEE. Plaintiff Charles Willison residents of Joliet, Illinois.

FFFFFF. Plaintiff Linda Woods is a resident of Vancouver, Washington.

GGGGGG. Plaintiff Glenwood Young is a resident of Upper Marlboro, Maryland.

8. Plaintiffs are part of a larger group of individuals victimized by Defendants who have chosen to work together to pursue claims against Defendants for their fraudulent scheme. The members of that group not plaintiffs in this action signed arbitration agreements when they purchased Defendants' products, and are pursuing their claims before the American Arbitration Association.

**DEFENDANTS**

9. On information and belief, Montelongo is a resident of San Antonio, Texas.

10. On information and belief, RETI is a Delaware limited liability company with its principal place of business in San Antonio, Texas.

11. On information and belief, PAG is a Nevada corporation with its principal place of business in San Antonio, Texas.

12. On information and belief, LB is a limited liability company with its principal place of business in San Antonio, Texas.

## V.

## FACTS

### A. MONTELONGO AND HIS SEMINARS

13. Montelongo began his career as a real estate investor in Texas in 2001 and began offering real estate investment seminars in 2005. He rose to national prominence between 2006 and 2008 as a star on the cable television reality show "Flip This House," and when he departed the show used his stardom to expand his seminar offerings nationwide. He now offers his seminars through a web of companies, including

defendants RETI, PAG, and LB. Montelongo and these entities, along with other entities and individuals not yet known to the plaintiffs, operate together an enterprise called in this complaint the "Armando Montelongo Seminars," or "AMS."

14. What Defendants claim to offer through AMS's education programs is a "methodical step-by-step system for building wealth in real estate" purportedly modeled on Montelongo's own experiences. One of their websites (armandomontelongo.com) claims: "I was fortunate enough to find millionaire mentors without whom I would have lost a lot of time, money, and hope. They helped me accomplish my goals and reach my dreams. This is why I am happy to share my secrets and help others succeed. Coming from living in my in-law's garage and $50,000 in debt, I know what it's like to struggle. I am the epitome of the American dream. I turned my misfortunes into millions, and I can help you do the same." That same website also claims the AMS system is bulletproof: "Armando's step-by-step methodical system works in any financial market, at any given time."

15. Defendants offer the AMS system through several education seminars, or "events." According to their website, they sell the following products which they falsely describe as follows:

a. The "preview event," "taught by Armando's personal partners, provides an inside look at the house flipping business and teaches about proven house flipping techniques. Network with successful partners and learn why anytime is the time for real estate. Learn about how to make money by flipping houses, build a retirement income through cash flow properties, and about how to keep your wealth through asset protection. At the Preview Events, you will: Network with Armando's hand-picked partners; See the options you can begin in real estate; Learn Armando's step-by-step system to investing…and so much more!"

b. The "foundation event" (sometimes called the "three-day event") is "an intensive, information packed workshop that gives you the foundation to build your own house flipping business. Learn all about how to find and fund your deals, how to use the techniques and rules Armando actively uses, and how to overcome common difficulties in real estate. The three[-]day event covers all important topics for beginning real estate investors. You will learn the ABC's of real estate investing, such as: After repair value vs. fair market value[;] The 1% Rule versus Mixed Rate[;] Various options for fixing and flipping[.] Upon completion of this in-depth, accelerated seminar, you'll be equipped [with] all the groundwork necessary for flipping properties."

c. The "bus tour" is a "three[-]day event filled with Armando's most successful and exclusive partners and students. At the bus tour, you will learn first-hand about house flipping techniques and easy fixes for profit and personal tips and advice from Armando Montelongo. This is your opportunity to network with other investors, money lenders, and students from all across the US. Learn how to properly assess properties with Armando and his most successful students as your guide. A one-of-a-kind event taught by Armando himself[;] Get hands-on training from a team of mentors[;] Network with other investors, money lenders, & students[;] Learn how to have a successful business[.] It took Armando a decade to establish his phenomenal house-flipping system. Learn it from the bus tour in just 3 days!"

d. The "master mentor" program, which promises "access to Armando's real estate hotline for any question you may have now or in the future. Call to update your knowledge on rehabbing different types of rental properties, tips on how to work with the constant changing commercial

market, and guidance whenever, wherever. Do you want to increase your cash flow and maximize your capital investment? Are you ready to strengthen your real estate portfolio with big commercial flips? YOUR VERY OWN MASTER MENTOR CAN HELP GET YOU THERE! Your Master Mentor[] will teach you how to effectively connect with investors specializing in commercial properties, lay out contracts, and much, much more."

e. "Continuing education" services, including the "asset protection" program, which Defendants falsely claim teaches "the most essential tools for protecting your finances," "healthy, strategic, and beneficial business planning," "[i]nformation on corporate structure and management," and "the latest information on how to save tax money for your business"; the "market domination" program, which Defendants falsely claim provides "the most efficient ways to flip in any market at this two[-]day event," "training on how to flip and find deals in the smallest markets" and "where the top real estate markets in the nation are," and the chance for students to "[n]etwork with sellers and investors to get tips from markets nationwide"; and the "cash flow" program, which Defendants falsely claim teaches students "to manage rental properties," "the system for rehabbing different types of rental properties[,]" "how to work with the always changing commercial market[,]" and how to "[a]ccelerate your real estate portfolio with commercial flips[.]"

16. The AMS enterprise has been hugely successful for Defendants. In 2011, Inc. 500 listed Montelongo's group of companies as the 19th fastest growing business in the nation. Montelongo claimed to Forbes magazine in 2013 that his seminars would bring in $100 million that year alone from 350,000 students attending over 3,500 events.

On his prolific Facebook page, Twitter feed, and Periscope channel, Montelongo trumpets his wealth—expensive cars, flashy jewelry, extravagant vacations—using the hashtag #millionaire.

**B. DEFENDANTS' FRAUDULENT SCHEME**

17. Although the ostensible purpose of the AMS programs is to educate students about how to gain economic security and independence by flipping houses, their real aim and result is to enrich Montelongo and his related entities and allies at the expense of the students, including the Plaintiffs herein. The "seminars" or "events" are not genuine educational offerings. They are ruses to sell more AMS products, engage in self-dealing transactions with the students (whose trust Montelongo cultivates), and expose the students, including Plaintiffs herein, to predation at the hands of AMS allies.

**Defendants' Coercive and Deceptive Sales Tactics**

18. Defendants market the AMS programs extensively through websites, email campaigns, late-night television, radio, and social media in the hopes of luring students to attend the programs, where they will be deceived into purchasing additional AMS products. These programs include free preview events, foundation courses, bus tours, and master mentor programs held throughout the United States.

19. The AMS system is a series of upsells. At the free preview event, the students are sold the approximately $1,500 to $2,700 "foundation" course (as well as a $797 to $997 "tax lien" product); at the foundation course they are sold bus tour packages priced between $18,000 and $54,000, usually held within the next few weeks in the same area; and on the bus tours they are sold the $25,000-plus "master mentor" program, as well as the $25,000 "market domination," $5,000 to $27,000 "asset protection," and $5,000 "cash flow" courses.

20. Defendants sell their products using coercion and deception. At the group events, students are crowded together into rooms or buses, where they are pounded with

loud music, flashing lights, and chanting; told not to take breaks or leave the room lest they miss a critical piece of information; and deprived of food and sleep by seminars that run until late in the night without end, and which begin again early the next morning.

21. At the end of the events, when the students are physically and mentally exhausted, they are promised that, if they purchase the next AMS product in line that very day, they will finally get the information that will make them successful in real estate investing (*i.e.*, the information they were told they would get in the event they already purchased). Having committed thousands of dollars to the AMS programs, and desperate to recoup their investment, many students comply and purchase more high-priced products. Defendants deliberately cultivate this sense of desperation: Former employees report that Montelongo coaches them to ensure the students "feel like they have received some content, but do not actually know what to do on Monday."

22. Defendants also engage in outright lies to sell their products, for example, creating fake personal success stories—different employees reuse the same slides of rehabilitated houses, each claiming them as his or her own—and planting employees at events to pose as students who have taken the courses before, and have returned for more "valuable education."

23. As another example of Defendants' sales tactics, they claim to offer students a "Triple Your Money Back Limited Guarantee," under which Defendants purportedly promise to refund students' money if they follow the AMS system and yet do not make three times their purchase price back from real estate investments. This guarantee is persuasive, and a significant factor in convincing many students to purchase AMS programs. However, AMS insiders report that Defendants do not intend to honor these guarantees, and direct their sales agents not to sign the guarantees on behalf of Defendants in the belief the lack of signature would render them unenforceable.

24. To further their scheme, Defendants encourage students to contact their credit card companies and report that they already have the income that they hope to

make from flipping houses—hundreds of thousands of dollars that they are not earning, and that Defendants know the students have no realistic chance of earning—in order to raise their credit limits to purchase more AMS products. Montelongo justifies this practice to his students as incurring "education debt," which he claims is "good debt."

25. Defendants also encourage students to transfer money in their employer-controlled or other secure retirement accounts to self-directed IRAs held by companies allied with Montelongo and the Defendant entities. Until at least mid-2015, Defendants' chosen company was Preferred Trust Company, LLC ("Preferred Trust"), run by Kurt "the Shirt" Weinrich. After that time, Weinrich continued to be Defendants' chosen self-directed IRA provider, apparently through a new entity the identity of which Plaintiffs do not yet know.

26. Defendants' alliance with Preferred Trust benefited them, Preferred Trust, and Weinrich at the expense and deception of the students. Preferred Trust charges extremely high fees for its services. As but one example of many, a San Diego resident put $5,000 in a Preferred Trust self-directed IRA and, within three years, was charged $4,200 in fees—even though she had done nothing with her account.

27. Weinrich also permits Montelongo access to confidential information about the students' finances that Defendants then use to prey upon them. During the asset protection events, Montelongo's employees ask students to share their financial information (including about their Preferred Trust accounts) in the name of educating the students. The employees then share that information with Montelongo, whose response to a positive account balance is visceral: Multiple former employees report that he shouts angrily, saying, "That's my money! You're not doing your job to get that in my pocket!" The employees comply, using their knowledge of the students' finances to sell them more AMS "education" or encourage them to invest in properties with AMS-allied developers.

28. To hide their deception, Montelongo and his employees instill fear in the students to discourage them from questioning the AMS system, and attacking or silencing

those who attempt to speak out. For example, early on in a group event, when someone asks a question, Montelongo will berate the speaker, deriding him or her for wasting the other students' time. Cowed, few others will dare to interrupt again. At other points in an event, Montelongo will mention his in-house legal team, and claim that no one could possibly sue him and win. The crux of these remarks is that anyone who would cross Montelongo on a business deal would lose, and that any student who would cross him would lose, too.

29. Defendants also carefully monitor the private Facebook groups to which they invite their past and present students, immediately deleting anything critical of not only AMS or Montelongo, but also of anyone else who is a member of the group—even if that person has cheated other students of money—and forcing out those who continue to dissent.

30. When pressed to prove their claims, Defendants have resorted to harassment. In late 2013, the news show *20/20* taped an interview with a student who complained that she and her husband had been cheated by Montelongo's seminars. Montelongo had her followed by a private investigator (as one of his employees later admitted). When Montelongo provided a student who was a "success story" to the news show, that student began recounting the wealth he had earned by following the AMS system, and then broke down and admitted it was a lie. Montelongo pursued this student, too—calling him personally and demanding he sign a declaration affirming that he had been successful.

**<u>Defendants' Worthless, Dangerous Offerings</u>**

31. Defendants' high-pressure sales tactics and promises of future fortune do not come with any educational substance. The core of AMS's "methodical step-by-step system" is so simple it can be taught in a sentence: Take out high-interest debt to purchase dilapidated homes, make cosmetic repairs, and then quickly flip them to the next investor. It is also a recipe for financial disaster. As just a partial list of the

system's failings:

a. A central tenet of the AMS sales pitch is that students do not need their own money to purchase, rehabilitate, and sell houses, and can instead obtain funding from private and hard money lenders. But these lenders generally require that the borrower front at least 20% of the project cost.

b. The "65% rule" Montelongo claims provides the ideal price for any property (take 65% of the planned sale price of the property once it has been rehabilitated, and then deduct repairs and holding costs to determine your offer price) does not account for local variations in market conditions, material prices, or labor prices, making it useless (or worse) in many regions of the country.

c. The similarly central "price reduction strategy"—submit an all-cash, no-contingency offer with a very short closing period, and then, once the property is in contract, demand a price reduction based on a new inspection and announce that, instead of cash, the deal will be funded by a hard money lender—has become anathema to realtors, who will often not even submit students' bids once the realtors realize the students are using the AMS system. This ethically questionable strategy also cannot be used at all with certain types of properties (*e.g.*, auction sales).

d. Homes cannot reliably be sold quickly enough and for prices high enough to cover the debt on them (especially when that debt is financed by high-interest hard money lenders, as the AMS system directs), leaving students with either unsaleable homes that end up in foreclosure or losses on their deals.

e. Federal and state regulations (*e.g.*, a Fannie Mae requirement

prohibiting sales of homes to FHA buyers unless the property has been held for 90 days) have altered the legality and profitability of house-flipping, but the AMS system—which has reportedly not been updated in 10 years—does not reflect them.

f. So many investors have entered the rehabilitation market (both the thousands of students AMS churns out annually and well-funded private equity investors) that prices for properties have increased, and margins have decreased. As a result, many students are unable to find suitable investment properties, and are left with mountains of debt from the AMS seminars and their account withdrawals, and no potential of recouping their losses.

32. Thus, contrary to Defendants' central claim, and as Defendants well know, the "system" does not "work[] in any financial market, at any given time."

**Defendants' Self-Interested Business Dealings with their Students**

33. Defendants also victimize their students by engaging in self-dealing transactions with them, frequently without disclosing their own interests. For example, before a bus tour event, Montelongo will use an affiliate to purchase properties in the area where the event will occur, and then, during the event, sell the properties to students at inflated prices without disclosing that he has an interest in the sales or receives a share of the profits. (One student fortuitously overheard Montelongo discussing this scheme when she dialed in early to a planned group call for AMS students.)

34. As another example, Montelongo solicited large amounts of student money for an investment in a marina near Sarasota, Florida called the Olde Fish House Marina. It may have reaped benefits for Montelongo—the AMS website describes it as a "successful casual dining establishment"—but the students who invested with him sustained heavy losses.

**Defendants' Exposure of Students to Predation by their Allies**

35. Defendants also harm students by encouraging them to work with AMS allies—"mentors" who are paid to provide the students with supposedly in-depth advice on rehabilitating particular types of properties and changing market conditions, but who often lack the experience to provide insight, take advantage of the students' trust to enrich themselves, or simply fail to respond to student questions; "hard money lenders" or "gap funders" who lend money to the students to purchase their homes at extremely high rates; and "developers" who solicit investments from students to be used in rehabilitation deals, which frequently end in inadvertent disaster or outright embezzlement.

36. Although Defendants handpick mentors, lenders, and developers, recommend to students that they work with those particular individuals, and benefit from these recommendations by appearing to offer students a comprehensive, practical program for real estate investing, Defendants refuse to take responsibility when those allies cause students harm. Some of these allies have reportedly come under criminal investigation; their identities will be revealed in the course of the prosecution of this case.

## C. THE HARM TO THE STUDENTS

37. Defendants' conduct has damaged their students, including Plaintiffs herein, in multiple ways.

38. First, the students pay thousands of dollars (and often tens of thousands of dollars) for real estate investment education that, contrary to Defendants' promises, does not give them the skills necessary to succeed "in any financial market, at any given time," but is instead a jumble of empty, contradictory aphorisms and outdated, risky strategies that might have been useful in 2005, when Montelongo launched his seminars, but that have failed to keep up with the changing market and legal landscape; and that ignores critical distinctions between various states' treatment of mortgages, costs of construction, taxes, and insurance requirements. Sometimes, Defendants even fail to provide the

promised services at all, charging students for AMS programs, and then providing neither the purchased services nor refunds.

39. Second, the students pay significant travel and meal expenses to attend the AMS seminars (as Defendants would reasonably foresee given the markets they target and the locations of the events).

40. Third, the students incur interest on the credit card debt that Defendants encourage them to incur, and penalties and fees on the self-directed IRAs that Defendants encourage them to use.

41. Fourth, Defendants engage in self-dealing transactions with the students in ways designed to cause the students additional pecuniary harm.

42. Fifth, this accumulation of losses and unpayable debts destroys the students' credit ratings, and pushes many of them into bankruptcy.

43. Sixth, Defendants provide dangerous and unlawful tax advice—for example, that the students can reduce their tax burden by naming their infant children and elderly parents as "employees" in order to deduct their "salaries" from their house-flipping revenues, or that the AMS seminars are fully tax deductible because they are "educational debt."

44. Seventh, Defendants recommend that the students work with particular mentors, contractors, realtors, developers, property managers, and lenders, even when they know or should know that these third parties are likely to cause the students harm through their negligence or intentional wrongdoing.

45. Eighth, the financial devastation wrought by the AMS programs has taken a heavy emotional toll, destroying friendships, wrecking marriages, driving students into clinical depression, and even resulting in suicide.

**D. THE STUDENT PLAINTIFFS**

46. The 138 student plaintiffs are all victims of Defendants' fraudulent scheme who, as a result of Defendants' actions and omissions have suffered, continue to

suffer, and will suffer into the foreseeable future damages and injuries. Each purchased one or more of the AMS foundation event, bus tour, master mentor, asset protection, market domination, and cash flow products; attended those events and attempted to employ the "advice" they received; and suffered financial injury as a result, including the money they paid directly to Defendants, the expenses they incurred to attend the events, the investments they lost due when they followed Defendants' "system," predation by Defendants' allies, penalties from their use of retirement funds, interest on consumer debt used to purchase AMS seminars, damage to their credit rating, bankruptcy, and (in some cases) severe emotional distress.

## E. RICO ALLEGATIONS

47. The persons culpable for the pattern of racketeering activity and conspiracy to commit it alleged in this complaint are defendants Montelongo, RETI, PAG, and LB, and entities and individuals not yet known to Plaintiffs.

48. The enterprise operated by these culpable persons is referred to here as "Armando Montelongo Seminars," or "AMS," and is comprised of Montelongo, the defendant companies, and the unknown entities and individuals.

49. The activity of the enterprise and the racketeering acts described here affect interstate commerce, because the AMS enterprise is primarily located in San Antonio, Texas, and yet conducts business and defrauds students throughout the United States.

50. Defendants have engaged in racketeering activity by violating three predicate statutes. First, in violation of 18 U.S.C. § 1961, Defendants have committed at least the following instances of wire fraud:

a. On October 18, 2011, Montelongo posted on his Facebook page a link and photos from the "AM Bus Tour September 2011" page.

b. On January 28, 2012, Montelongo posted on his Facebook page photos

from a bus tour in Cerritos, California.

c. On March 13, 2012, Montelongo posted on his Facebook page photos from a bus tour in Pomona, California.

d. On July 13, 2012, Montelongo posted on his Facebook page photos from a bus tour.

e. On September 22, 2012, Montelongo sent an email blast titled "Executive Summary - Day 6 of 6 High Level Investment Strategy."

f. On September 24, 2012, Montelongo sent an email blast titled "Armando Says[—]'This Is a First Ever.'"

g. On September 26, 2012, Montelongo sent an email blast titled "Armando's Double Header Reminder."

h. On October 2, 2012, Montelongo sent an email blast titled, "Best Opportunity Ever."

i. On November 3, 2012, Montelongo posted on his Facebook page photos showing "[t]hree full days of Armando teaching his AMazing students how to Dominate their Market."

j. On March 12, 2013, Montelongo posted on his Facebook page photos from a bus tour captioned "Best Real Estate Seminars in the business."

k. On June 23, 2013, Montelongo posted on his Facebook page photos showing "Students continu[ing] their education during June's Cash Flow weekend" program.

l. On August 25, 2013, Montelongo posted on his Facebook page photos of students "learn[ing] real estate from Armando Montelongo and his team" on a bus tour.

m. On October 3, 2013, Montelongo posted on his Facebook page photos from a bus tour in San Antonio, Texas.

n. On November 8, 2013, Montelongo posted on his Facebook page

photos from a bus tour in Phoenix, Arizona.

o. On April 27, 2014, Montelongo posted on his Facebook page a video from a bus tour in Miami, Florida.

p. On July 13, 2014, Montelongo posted on his Facebook page a video from a bus tour.

q. On August 24, 2014, Montelongo posted on his Facebook page a video from a bus tour.

r. On February 6, 2015, Montelongo and a number of his companies' employees appeared on the CBS show "Undercover Boss."

s. On July 28, 2015, Montelongo posted on his Facebook page a photo and invitation to the introductory AMS events.

t. On November 23, 2015, Montelongo posted on his Facebook page photos from an AMS "bootcamp" event in Las Vegas, Nevada.

u. On December 10, 2015, Montelongo posted on his Facebook page a video from a bus tour in Miami, Florida.

v. On January 12, 2016, Montelongo posted a video on YouTube promoting the AMS "asset protection" program.

w. On February 23, 2016, Montelongo posted on his Facebook page a photo from a bus tour.

x. On April 24, 2016, Montelongo posted on his Facebook page a video from an "advanced rehab" class.

y. On June 11, 2016, Montelongo posted on his Facebook page a video from a bus tour in Riverside, California.

z. On July 17, 2016, Montelongo posted on his Facebook page a video from an AMS wholesaling seminar in San Antonio, Texas.

aa. On August 27, 2016, Montelongo posted on his Facebook page a photo of him speaking at a cash flow seminar in San Antonio, Texas.

bb. On September 12, 2016, Montelongo posted on his Facebook page a video of an AMS "advanced rehab" class.

cc. On November 11, 2016, Montelongo posted on his Facebook page an announcement about a bus tour event in Doral, Florida.

dd. Since about August 2006, and continuously to the present, Defendants have maintained the website armandomontelongo.com and promoted the AMS programs there. Since about April 2007, and continuously to the present, Defendants have maintained the website armandolive.com and promoted the AMS programs there. Defendants conceal the ownership of their websites using a private domain registrar.

51. These acts constitute wire fraud because Defendants developed a scheme to defraud Plaintiffs out of their money by false promises and misrepresentations about their products and about the market for house flipping, and by self-dealing transactions with them; Defendants had the intent to defraud Plaintiffs; it was reasonably foreseeable to Defendants that the wires would be used in that scheme; and Defendants used the wires to further that scheme by promoting their products.

52. Second, in violation of 18 U.S.C. § 2314, Defendants have transported in interstate commerce money in excess of $5,000 they knew to have been taken by fraud. They set up events in states across the nation, defrauded students (including Plaintiffs herein) of thousands or tens of thousands of dollars each, and then transported those funds across state lines by transmitting them either to their corporate offices or to financial institutions in Texas.

53. Third, also in violation of 18 U.S.C. § 2314, Defendants devised a scheme to defraud and then induced persons to travel in interstate commerce so that they could defraud those persons of more than $5,000. At live events, over the phone, and online, Defendants persuaded students (including some Plaintiffs herein) to travel to events in other states, where they were deceived into spending thousands or tens of thousands of

dollars on AMS products. These include:

a. In February 2012, students living in Glendora, California were induced to travel to Las Vegas, Nevada for an asset protection event.

b. In April 2012, students living in Glendora, California were induced to travel to Las Vegas, Nevada for a “buy and hold” event.

c. In May 2013, students living in San Diego, California were induced to travel to San Antonio, Texas for an asset protection event.

d. In August and October 2013, a student living in Norco, California was induced to travel to San Antonio, Texas for asset protection events.

e. In October 2013, a student living in West Hills, California was induced to travel to an asset protection event in San Antonio, Texas.

f. In October 2013, a student living in Eastvale, California was induced to travel to an asset protection event in San Antonio, Texas.

g. In November 2013, students living in Bellflower, California were induced to travel to a bus tour event in Mesa, Arizona.

h. In November 2013, a student living in Manhattan Beach, California was induced to travel to a bus tour event in Phoenix, Arizona.

i. In December 2013, a student living in Eastvale, California was induced to travel to a bus tour event in Scottsdale, Arizona.

j. In April 2014, a student living in Manhattan Beach, California was induced to travel to a market domination event in San Antonio, Texas.

k. In October 2015, students living in Orange, California were induced to travel to a bus tour event in Miami, Florida.

l. In November 2015, students living in Orange, California were induced to travel to a master mentor program in San Antonio, Texas.

54. Defendants have conducted the enterprise through a pattern of racketeering activity that satisfies both the close-ended and open-ended continuity

requirements of RICO, because (a) they committed a series of acts of wire fraud, interstate transportation of money obtained by fraud, and inducement of persons to travel across state lines for the purpose of defrauding them within ten years that were related in their purpose, results, participants, victims, and methods of commission; and (b) Defendants threaten to continue to carry out wire fraud, interstate transportation of money obtained by fraud, and inducement of persons to travel across state lines for the purpose of defrauding them in the same manner and to the same ends now.

55. Plaintiffs are persons who have sustained injury to their business or property by reason of Defendants' racketeering activity and overt acts committed in furtherance of their conspiracy to operate the enterprise.

56. Plaintiffs do not believe their claims are barred by the statute of limitations but, if any individual Plaintiff's claim would be barred in whole or in part, Defendants may not rely upon that bar because they fraudulently concealed from Plaintiffs that (a) the AMS programs exist only to sell more AMS programs and did not confer the skills promised, and (b) Defendants were engaging in self-dealing transactions with Plaintiffs, giving rise to equitable tolling.

## VI.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### RICO § 1962(c)

### (Conducting a RICO Enterprise by a Pattern of Racketeering Activity)

57. Plaintiffs incorporate by reference paragraphs 1 through 56 above.

58. AMS is an enterprise engaged in and whose activities affect interstate commerce. Defendants are employed by or associated with the enterprise.

59. Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs.

60. Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of wire fraud, interstate transportation of money obtained by fraud, and inducement of persons to travel across state lines for the purpose of defrauding them, as described herein.

61. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

62. Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

63. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property.

## SECOND CAUSE OF ACTION

## RICO § 1962(d)

## (Conspiring to Conduct a RICO Enterprise by a Pattern of Racketeering Activity)

64. Plaintiffs incorporate by reference paragraphs 1 through 63 above.

65. As set forth above, Defendants agreed and conspired to violate 18 U.S.C. § 1962(a). Specifically, they agreed to market and conduct the AMS programs through a pattern of deceptive behavior, wire fraud, interstate transportation of money obtained by fraud, and inducement of persons to travel across state lines for the purpose of defrauding them, and use the proceeds from their misconduct to market and sell still further AMS programs.

66. Defendants have intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a) in violation

of 18 U.S.C. § 1962(d).

67. As direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property.

**THIRD CAUSE OF ACTION**

**Negligence**

68. Pleading in the alternative, Plaintiffs incorporate by reference paragraphs 1 through 63 above.

69. Defendants owed Plaintiffs a duty to use reasonable care in providing their services and not self-deal for their own benefit. Defendants also had a special relationship with Plaintiffs, because Montelongo encouraged Plaintiffs to treat him and his employees, who are also employees of the entity Defendants, as mentors, and to put trust in Defendants' superior expertise in real estate investment.

70. Defendants breached their duties to Plaintiffs. They charged Plaintiffs thousands of dollars (and frequently tens of thousands of dollars) for real estate investment education, but did not use reasonable care to ensure that the AMS seminars and events gave Plaintiffs the skills necessary to succeed "in any financial market, at any given time," as Defendants promised; failed to use reasonable care to avoid engaging in self-dealing; knew or should have known, but failed to warn Plaintiffs, that the individuals and entities with whom Defendants recommended Plaintiffs do business were likely to cause harm to Plaintiffs through incompetence or intentional misconduct; and failed to use reasonable care to ensure that Plaintiffs received the promised services at all.

71. Defendants' conduct has damaged Plaintiffs as described herein.

72. Montelongo and the other Defendants' breaches of their duties proximately caused Plaintiffs' injuries.

73. Plaintiffs seek millions of dollars in damages, above and beyond the jurisdictional limits of this court.

## FOURTH CAUSE OF ACTION

### Negligent Misrepresentation

74. Pleading in the alternative, Plaintiffs incorporate by reference paragraphs 1 through 63 above.

75. Defendants owed Plaintiffs a duty to use reasonable care in representing their products and services. Defendants also had a special relationship with Plaintiffs, because Montelongo encouraged Plaintiffs to treat him and his employees, who are also employees of the entity Defendants, as mentors, and to put trust in Defendants' superior expertise in real estate investment.

76. Defendants represented to Plaintiffs that the AMS seminars, events, and related products would give them the skills necessary to succeed "in any financial market, at any given time," that the properties sold by Defendants at their events were good investment opportunities, and that the individuals and entities with whom Defendants recommended Plaintiffs do business were skilled in their respective fields and trustworthy.

77. Defendants failed to disclose to Plaintiffs that the AMS seminars were not genuine educational offerings, but instead ruses to sell more seminars and products; that the properties sold at Defendants' events were owned by Defendants or others in league with them, and were being offered at prices that made them poor investment opportunities; and that they knew or should have known of the risks that the AMS allies to whom they referred the students were likely to harm Plaintiffs through incompetence or intentional misconduct. The truth of these matters were material facts that, had they been disclosed to Plaintiffs, would have prevented Montelongo and the other Defendants from engaging in their improper sales tactics, self-dealing, and referrals to their allies at the expense of Plaintiffs.

78. Defendants made the false representations, affirmatively and by omission, in the course of Defendants' businesses and in transactions in which Defendants had

pecuniary interests, and supposedly for the guidance of Plaintiffs in their real estate activities, investments, and financial transactions. Defendants' misrepresentations were concerted tactical and specific failures to disclose information when Defendants had a duty to do so.

79. Defendants did not exercise reasonable care or competence in obtaining or communicating the information they presented to Plaintiffs.

80. Plaintiffs justifiably relied on Defendants' false information and false representations by enrolling in and paying for Defendants' phony and fraudulent programs, unknowingly participating in financial and real estate transactions in which Defendants were engaged in self-dealing, and engaging in transactions with individuals and businesses they did not know were likely to cause them harm.

81. Montelongo's and the other Defendants' false information and false representations proximately caused, continue to cause, and will continue to cause the injuries and damages to Plaintiffs specifically pled in this complaint, which damages are above and beyond the jurisdictional limits of this court.

## VII.

## ATTORNEYS FEES AND COSTS

82. Plaintiffs incorporate by reference paragraphs 1 through 81 above.

83. By reason of Defendants' refusal to refund the money Plaintiffs spent on Defendants' products, it has been necessary for them to employ attorneys to prosecute this cause for them and Plaintiffs hereby request an award of reasonable attorneys' fees and costs.

## VIII.

## JURY TRIAL IS DEMANDED

84. Plaintiffs hereby demand a jury trial of all issues triable by jury.

**IX.**

**PRAYER**

85. WHEREFORE, Plaintiffs hereby request:

A. Judgment against Defendants in the amounts respectively due each Plaintiff for past, present, and future compensatory damages;

B. Treble the amount of compensatory damages;

C. Exemplary damages;

D. Reasonable attorneys' fees and costs;

E. Such further relief as the court deems just and proper.

Date: December 20, 2016

Respectfully Submitted,

**SERNA & ASSOCIATES PLLC**

By: /x/ Enrique G. Serna
Enrique G. Serna
State Bar No. 00178617
20985 IH 10 West
San Antonio, Texas 78257
(210) 228-0095 Phone
(210) 228-0839 Fax
enrique@serna-associates.com

**EMERGENT, PC**

CHRISTOPHER WIMMER (*pro hac vice* pending)
PETER ROLDAN (*pro hac vice* pending)
JASON FISHER (*pro hac vice* pending)
535 Mission Street, 14th Floor
San Francisco, California 94105
(415) 894-9284 Phone
(415) 276-8929 Fax
chris@emergent.law
peter@emergent.law
jason@emergent.law