UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
MAR 2 3 2018
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

CLAUDIA OCORO, ISRAEL )
ROSALES, DIANA ALVARADO )
HARRIS, CYNTHIA WOODS JONES, )
GALE JONES, et al. )
)
Plaintiffs, )
) Civil Case No. 5:16-CV-01278 (RCL)
v. )
)
ARMANDO MONTELONGO JR., )
REAL ESTATE TRAINING )
INTERNATIONAL, LLC, )
PERFORMANCE ADVANTAGE )
GROUP, INC., LICENSE BRANDING, )
LLC. )
)
Defendants. )

## Memorandum Opinion:
## Denying as Moot the Defendants' 12(b)(1) Motion;
## Granting the Defendants' Motion to File a Surreply; and
## Granting in Part and Withholding Judgment in Part on the Plaintiffs' 15(a)(2) Motion

### I. Introduction

Before the Court are the following motions:

(1) Defendants' Motion to Dismiss and Compel Arbitration pursuant to Federal Rule of Civil Procedure 12(b)(1) [ECF No. 12]

(2) Plaintiffs' Motion for Leave to File a First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) [ECF No. 24], and

(3) Defendants' Motion for Leave to File Surreply in Opposition to Plaintiffs' Motion for Leave to Amend [ECF No. 29].

First, because the relevant plaintiffs already voluntarily dismissed their claims, the Court will **deny as moot** the defendants' motion to dismiss and compel arbitration pursuant to Rule 12(b)(1).

1

Second, the Court will **grant** the defendants' motion for leave to file a surreply. Finally, the Court will **grant in part** and **delay ruling in part** on the plaintiffs' motion for leave to file their First Amended Complaint.

## II.     Background

This case concerns allegations brought by 138 plaintiffs for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), negligence, and negligent misrepresentation in connection with the real estate education programs of Armando Montelongo Jr.; Real Estate Training International, LLC; Performance Advantage Group, Inc.; and License Branding, LLC ("Defendants"). The plaintiffs are all current or former students of Defendants' real estate education programs.

On March 6, 2017, the defendants filed a 12(b)(1) motion to dismiss the claims of 36 plaintiffs for lack of subject matter jurisdiction and requested that this Court compel those plaintiffs to arbitrate [ECF No. 12]. The defendants' allege that each of the 36 plaintiffs identified entered into purchase agreements with the defendants that contained the following arbitration provision:

> The arbitration will be governed by the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA. The AAA Rules are available online at www.ADR.org, [or] by calling the AAA at 1-800-778-7879. The parties agree that the validity of this arbitration agreement will be solely decided by the arbitrator. Unless otherwise agreed or provided herein this Agreement, the Parties will split only the costs and fees associated with conducting the arbitration.

[ECF No. 12]. On March 20, 2017, the 36 plaintiffs addressed in the defendants' 12(b)(1) motion voluntarily dismissed their claims to pursue them through arbitration. [ECF No.17]. However, due to the defendants' failure to cooperate with the AAA, these plaintiffs, in addition to 42 new

2

plaintiffs subject to the same arbitration clause, now seek to rejoin/join the proceedings before this Court.

The defendants' failure to cooperate with the AAA is illustrated by the case of the Crabtrees. On March 8, 2017, Mike and Susan Crabtree filed a request for dispute resolution services with the AAA pursuant to their purchase agreement with the defendants (the "Crabtree Dispute"). The Crabtrees were two of the defendants' students who were not named as plaintiffs in the present case. The Crabtree's allege that they sustained damages in connection with the purchase agreement they entered into with the defendants.

On April 7, 2017, the AAA issued a letter notifying the parties that the AAA's Consumer Arbitration Rules ("Consumer Rules") applied to the Crabtree Dispute and requesting a waiver of the cost-splitting provision of the purchase agreement. The AAA explained that the Crabtree Dispute arose out of a consumer agreement and, while the arbitration provision referenced the Commercial Arbitration Rules ("Commercial Rules"), under R-1 of the Commercial Rules "[a] dispute arising out of a consumer arbitration agreement will be administered under the AAA's Consumer Arbitration Rules." Additionally, the AAA found that the cost-splitting provision of the arbitration provision substantially deviated from the Consumer Rules and Consumer Due Process Protocol.[1] Accordingly, the AAA requested that the defendants waive the cost-splitting provision.

On April 21, 2017, pursuant to Consumer Arbitration Rule R-1(e), the defendants submitted a letter objecting to the use of the Consumer Rules and waiver of the fee-splitting provision.[2] The defendants contend that the AAA's Commercial Arbitration Rules should be

---

[1] Under the Consumer Arbitration Rules plaintiffs are only required to pay a $200 filing fee, whereas under the Commercial Arbitration rules the plaintiffs would be required to split an initial filing fee of $4,000 with Defendants.
[2] Under Consumer Arbitration Rule R-1(e), "[t]he AAA has the initial authority to apply or not to apply the Consumer Arbitration Rules. If either the consumer or the business disagrees with the AAA's decision, the objecting party must submit the objection by the due date for filing an answer to the demand for arbitration. If an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply."

3

controlling under the terms of the purchase agreement. The defendants also acknowledge that the Supplementary Procedures for Consumer Related Disputes ("Consumer Supplement") have been replaced by the Consumer Rules, but argue that the Consumer Rules should be secondary and supplementary to the Commercial Rules. Defendants explain that under the Commercial Rules, fee splitting is permissible and *incorrectly* state that fee splitting would have been permissible under the Consumer Supplement. Accordingly, the defendants reiterate that under the controlling Commercial Rules the plaintiffs should be responsible for half of the initial $4,000 filing fee and refused to comply with the AAA's requests. But the defendants acknowledged that "[i]f an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply." [ECF No. 24 at 51].

The AAA subsequently reaffirmed its determinations regarding the Crabtree Dispute and ordered that if the defendants did not comply with their requests by July 18, 2017, they would no longer preside over the dispute. The AAA provided the following comprehensive explanation outlining their position:

> Even if we put aside that R-1 of the Consumer Rules states that contracts referring to the Consumer Supplement will be administered under the Consumer Rules, fee splitting is not permissible and the Consumer Rules apply. . . First, [the Consumer Supplement], and indeed every set of AAA's rules state that the AAA's rules in effect at the time of filing will be used when the arbitration is commenced. As the Consumer Supplement has been replaced by the Consumer Rules, the Consumer Rules are appropriate and contemplated by the parties' agreement. Second, the Consumer Supplement also capped the consumer's costs at $200. Third, regardless of the particular set of rules, the Consumer Due Process Protocol has been applied to all consumer arbitration since its adoption and cost splitting has always been considered a material and substantial deviation from which the AAA required a waiver to proceed. Fourth, the Commercial Rules incorporate the Consumer Rules by reference for consumer arbitrations. Therefore, even if we carve out the reference to the Consumer Supplement as impossible, the Commercial Rules lead us back to the Consumer Rules. Finally,

> the Consumer Rules state that the Consumer Rules apply to any consumer arbitration that designates any set of AAA rules, however named and regardless of party intent. A business may not avoid application of the Consumer Rules or the Consumer Due Process Protocol by designating another set of rules; that would swallow the Consumer Rules. [ECF No. 24 at 63].

On July 18, 2017, the defendants sent an email to the AAA again refusing to waive the cost-splitting provision and the AAA issued a letter providing notice that they would no longer administer the Crabtree Dispute. The AAA's letter also stated that they "may decline to administer future consumer arbitrations involving [defendants]." So the defendants' uncooperativeness prevents arbitration with the AAA.

As a result of the defendants' obstinacy, the plaintiffs now seek leave to file their First Amended Complaint. The amended complaint seeks to rejoin as plaintiffs the 36 plaintiffs who earlier voluntarily dismissed their suit to pursue arbitration, to newly join an additional 42 plaintiffs who have arbitrations agreements with the defendants, and to join an additional 114 new plaintiffs who are (allegedly) not contractually bound by arbitration provisions and have not brought their claims against the defendants in any other forum. For purposes of this opinion, the Court will divide these plaintiffs seeking to join the present suit into two groups—those with arbitration agreements ("Arbitration Plaintiffs") and those without arbitration agreements ("Non-arbitration Plaintiffs).

### III. Legal Standards

#### A. Federal Rule of Civil Procedure 12(b)(1) & Motion to Compel

In this Circuit, "a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration." *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014). District courts have the authority to compel arbitration under Section 4 and Section 206 of the Federal Arbitration Act

5

(the "FAA"), provided that a valid and enforceable arbitration agreement exists. *See* 9 U.S.C. §§ 4, 206. Under the FAA, written arbitration agreements in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "There is a strong presumption in favor of arbitration and the party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

When faced with a motion to compel, courts routinely apply a two-step inquiry. First, the court examines whether the parties agreed to arbitrate the dispute in question. "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Second, courts analyze "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

### B. Federal Rule of Civil Procedure 15

Under Rule 15, a party can amend its pleadings once as a matter of course and then "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The decision to grant leave to amend is within the discretion of the District Court but courts "should freely give leave when justice so requires." *Id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962). When determining whether to grant leave to amend courts consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182.

## IV. Analysis

### A. As to the Plaintiffs' Rule 15(a)(2) Motion to Amend

#### 1. Granting the Plaintiffs' 15(a)(2) Motion as to the Non-arbitration Plaintiffs

Under Rule 15, leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Therefore, leave to amend should not be denied "unless there is a substantial reason to do so." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994).

Here, the plaintiffs seek to add 114 plaintiffs who bring substantially similar claims against the defendants as the prior plaintiffs in this case. The plaintiffs also assert that the 114 additional plaintiffs have not previously brought theirs claims in any forum and are not subject to binding arbitration agreements. The defendants argue that the addition of these 114 plaintiffs should be denied on the grounds that the proposed amendment is unduly delayed and prejudices them. But the Court finds that these arguments are without merit given that the plaintiffs are bringing substantially similar claims and no substantive rulings have been issued at this point in the case. Therefore, this Court finds that none of the Rule 15 factors—undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment—are implicated by the addition of these 114 plaintiffs and grants the plaintiffs' 15 (a)(2) motion as it applies to them.

#### 2. Giving the Defendants a Choice as to How to Proceed with the Arbitration Plaintiffs

There is no dispute that the Arbitration Plaintiffs and the defendants entered into binding arbitration agreements that apply to the claims brought in this case. *See* ECF No. 24. But the

7

plaintiffs seek to amend their complaint to add the Arbitration Plaintiffs' claims due to the defendants' refusal to cooperate with the AAA as evidenced by the Crabtree dispute.

The problem, as the Court sees it, is as follows. The arbitration clause states that any disputes arising from the contracts will be arbitrated by the AAA. The clause also states that fees will be split in a certain way and that the AAA's Commercial Rules and Consumer Supplement will govern the dispute. But these provisions cannot all be fulfilled—the AAA will not arbitrate the parties' disputes unless fees are split in the way it deems appropriate under the Consumer Rules.

Given this state of affairs, the defendants attempt to put the Arbitration Plaintiffs in a Catch-22. First, the defendants said that the Arbitration Plaintiffs could not litigate their claims in this Court because they were required to arbitrate. Then, when the Arbitration Plaintiffs agreed to arbitrate, the defendants behaved so poorly that the AAA threatened to refuse to preside over the disputes. And now the defendants oppose the Arbitration Plaintiffs' attempt to return to this Court, saying that those plaintiffs must instead participate in the arbitration that the defendants are stonewalling. Ultimately, the defendants are trying to deny the Arbitration Plaintiffs any forum in which to be heard. The Court will not allow that.

Something has to give. And the Court will let the defendants choose what will give. The Court gives to the defendants two options. Option one: The defendants may choose to comply with the AAA's rulings about the applicable rules and fee arrangements and waive their objections so that arbitration may go forward. Option two: If the defendants cannot swallow abiding by the AAA's decisions regarding how arbitration is to proceed, then the Court will proceed by granting to the plaintiffs leave to amend since arbitration is otherwise futile. But the defendants will have

8

seven days from the date of this opinion and accompanying order to notify the Court of their decision whether to comply with option one.

As a final note, had the Arbitration Plaintiffs specifically requested enforcement of the AAA's decisions regarding how arbitration was to proceed, and had the issue been fully briefed, the Court might have been inclined simply to order the defendants to comply with the AAA's rulings and to proceed with arbitration. But the Arbitration Plaintiffs did not request that relief. Instead, they seek to join this litigation. The Court concludes then that the Arbitration Plaintiffs waive their right to arbitrate. All that remains is to see what the defendants will waive—their right to arbitrate or their objections to the AAA's decisions.

## V. Conclusion

For the reasons stated above, the Court will do the following:

- **Deny as moot** the defendants' motion to dismiss and compel arbitration [ECF No. 12].

- **Grant** the defendants' motion for leave to file a surreply [ECF No. 29].

- **Grant in part** the plaintiffs' motion for leave to file an amended complaint as to the 114 Non-arbitration Plaintiffs [ECF No. 24].

- **Withhold judgment** on the remainder of the plaintiffs' motion for leave to file an amended complaint.
  - **Order** the defendants to notify the Court of its decision within seven days of the date of this opinion and accompanying order. The defendants may (1) waive all objections to the AAA's rulings regarding how arbitration is to proceed, or (2) waive their right to arbitrate and instead litigate their dispute with the Arbitration Plaintiffs in this Court.

**A separate order will issue.**

DATE: March 23 2018

Royce C. Lamberth
United States District Judge