FILED

JUN 1 9 2018

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CLAUDIA OCORO, et al.,

    Plaintiffs,

v.

ARMANDO MONTELONGO JR.; REAL
ESTATE TRAINING INTERNATIONAL,
LLC; PERFORMANCE ADVANTAGE
GROUP, INC.; LICENSE BRANDING,
LLC,

    Defendants.

Case No: 5:16-cv-01278-RCL

## MEMORANDUM OPINION

Before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 39] by the defendants Armando Montelongo Jr., Real Estate Training International, LLC ("RETI"), Performance Advantage Group, Inc. ("PAG"), and License Branding, LLC ("LB"), and all responses and replies thereto. For the reasons stated below, the Court **GRANTS** the defendants' motion to dismiss.

### Background

This case involves allegations brought by 355 plaintiffs for civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), negligence, and negligent misrepresentation against the defendants: Armando Montelongo, RETI, PAG, and LB (referred to collectively by the complaint as "Armando Montelongo Seminars," or "AMS"). Specifically, the plaintiffs assert the following four claims against Montelongo and each of the three identified defendant entities:

1

(1) conducting a RICO enterprise by a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) (*Id.* at 30-31, ¶¶57-63);

(2) conspiring to conduct a RICO enterprise by a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d) (*Id.* at 31-32, ¶¶64-67);

(3) negligence (*Id.* at 32-33, ¶¶68-73); and

(4) negligent misrepresentation (*Id.* at 33-34, ¶¶74-81).

Armando Montelongo, a former star of the A&E television series "Flip This House," runs a real estate education business that operates through the three other defendant entities (RETI, PAG, and LB). ECF No. 37 at 11-12, ¶13. The defendants provide various seminars and educational offerings, each focusing on different aspects of the real estate industry, in the form of preview events, foundation events, bus tours, and continuing education programs. ECF No. 37 at 12-15, ¶15. This business has proven lucrative for Montelongo. In 2013, Forbes reported that Montelongo's seminars would generate $100 million in revenue in that year alone. *Id.* at 15, ¶16.

The First Amended Complaint alleges that the 355 plaintiffs, each a current or former customer of the defendants' seminars, fell victim to predatory and fraudulent business practices conducted by the defendants. ECF No. 37 at 11, ¶¶7-8. The plaintiffs claim that the defendants' offerings are devoid of educational value. Instead, they are nothing more than a series of fraudulent up-sells designed to deceive and coerce customers into purchasing additional products. *Id.* at 15, ¶17.

The First Amended Complaint is actually the fourth iteration of this suit against Montelongo and the entities through which he operates the real estate education program. This suit was preceded by *Skurkis, et al. v. Montelongo, et al.* (Case No. 4:16-cv-00972-YGR) (N.D. Cal.), which was initially brought on February 26, 2016, in the United States District Court for the

Northern District of California by 166 plaintiffs, 124 of whom are plaintiffs in the instant case. ECF No. 41 at 2.

In response to the first complaint in *Skurkis*, the defendants filed a motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. The plaintiffs then amended their complaint with leave from the Court. The defendants responded again by filing a motion to dismiss under Rules 12(b)(2) and 12(b)(3). The Honorable Yvonne Gonzalez Rogers, presiding over *Skurkis*, granted the defendants' motion to dismiss for lack of personal jurisdiction while granting leave to amend if the plaintiffs could satisfy the jurisdictional requirements over each defendant in California. Instead of amending again, the plaintiffs voluntarily dismissed their suit pursuant to Rule 41(a).

The Complaint in this case [ECF No. 1] was subsequently filed in this Court on December 20, 2016, by 138 plaintiffs. The plaintiffs were later granted leave to amend the Complaint to add additional plaintiffs, bringing the current count to 355. In response to the First Amended Complaint, the defendants filed (1) a motion to dismiss pursuant to Rule 12(b)(6) [ECF No. 39], or in the alternative, (2) a motion for a more definite statement pursuant to Rule 12(e) [ECF No. 40]. These motions are now ripe for consideration.

## Discussion

### I. The plaintiffs' allegations do not pierce the corporate veil.

The First Amended Complaint refers to RETI, PAG, and LB as Montelongo's "corporate shells" (ECF No. 37 at 9, ¶2) and "web of companies" (*Id.* at 12, ¶13). In their response to the defendants' motion to dismiss, the plaintiffs point to these two statements as contentions that Montelongo "controls the other entities and uses them as shells," which they assert should give rise to an inference that the other three defendants are Montelongo's "alter egos." ECF No. 46 at

11-12. Under the most generous interpretation of the complaint, the plaintiffs appear to attempt a corporate veil-piercing theory. This theory was rejected by the Northern District of California Court with respect to the question of personal jurisdiction, and it is likewise rejected by this Court with respect to the adequacy of the plaintiffs' pleadings. *See Skurkis*, Dkt. No. 60 at 9.

First, the plaintiffs failed to specifically plead a right to relief under the corporate veil-piercing theory in their First Amended Complaint. The unsupported statement in the introductory portion of the complaint that Montelongo, acting through his "many corporate shells," "sells worthless, dangerous, and unlawful advice about real estate investing; takes advantage of students' trust to loot their accounts; sells them properties at inflated prices without disclosing his stake in them; encourages them to pursue their real estate investments using his allies, who also victimize the students; and harasses those who dare to speak out against him" does not even reference the alter ego theory, let alone come close to pleading the specific facts necessary to assert a claim of piercing the corporate veil. ECF No. 37 at 9, ¶2. A Court ruling on a 12(b)(6) motion is "limited to the allegations set forth in the complaint." *Luppino v. York*, No. SA-16-CV-00409-RCL, 2017 WL 8161008, at *2 (W.D. Tex. Nov. 27, 2017) (quoting *Roebuck v. Dothan Sec. Inc.*, 515 Fed.Appx. 275, 280 (5th Cir. 2013). The plaintiffs are not permitted to amend their complaint by way of their response to the defendants' 12(b)(6) motion with the late introduction of an alter ego theory. 515 Fed.Appx. at 280.

The Court finds no allegations in the complaint that allow the plaintiffs to pierce the corporate veil such that the actions of one defendant can simply be attributed to all the other defendants. Under the alter ego theory the plaintiffs ask this Court to consider in their response, a corporation may be deemed the alter ego of an individual "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the

4

corporation liable would result in injustice." *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). When applying the alter ego doctrine, a court considers the following factors:

> the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes.

*Id.* As the First Amended Complaint fails to elaborate on any of the above listed factors to a satisfactory extent beyond the conclusory use of the term "corporate shells," the plaintiffs may not avail themselves of the alter ego doctrine to pierce the corporate veil.

Alternatively, a plaintiff may pierce the corporate veil by demonstrating that the owner of a business entity uses that entity "for the purpose of perpetrating, and did perpetrate an actual fraud . . . for the direct personal benefit of the" owner. TEX. BUS. ORG. CODE § 21.223(b) (West 2016). As discussed below, the plaintiffs fail to state a RICO claim predicated on fraudulent acts. As they cannot sustain a claim involving fraud, they cannot pierce the corporate veil under a theory of fraud. *See Shandong Yinguang Chemical Industries Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1036 (5th Cir. 2010).

## II. Legal Standard—Rule 12(b)(6)

In order to carry the pleading burden, plaintiffs are required by the Federal Rules of Civil Procedure to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts pled must allow for a reasonable inference of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, but well-pleaded factual allegations within the complaint must be accepted by the Court as true. *Id.* at 678. These factual allegations must, in the light most favorable to the plaintiff, raise the right to relief above speculation.

*Twombly*, 550 U.S. at 55. A claim that fails to state a claim upon which relief may be given will be dismissed. FED. R. CIV. P. 12(b)(6).

### III. The plaintiffs failed to plead the existence of a pattern of racketeering activity required by 18 U.S.C. § 1962(c) with sufficient particularity.

The elements of a § 1962(c) violation include: (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). RICO claims based on allegations of fraud are subject to the heightened pleading burden imposed by Rule 9(b) of the Federal Rules of Civil Procedure. *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Rule 9(b) requires particularity in pleading the "circumstances constituting fraud." FED. R. CIV. P. 9(b). In the Fifth Circuit, a claim subject to Rule 9(b) must state the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Tel-Phonic Service, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). Consequently, "general allegations, which do not state with particularity what representations *each* defendant made," are insufficient when Rule 9(b) particularity is warranted. *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) (emphasis added).

This higher standard is imposed on allegations of fraud due to the irreparable damage unsubstantiated allegations may inflict on a defendant's reputation. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). Rule 9(b) is meant to stand as a threshold barrier preventing plaintiffs from "filing baseless complaints and then attempting to discover unknown wrongs." *Norman v. Apache Corp.*, 19 F.3d 1017, 1022 (5th Cir. 1994) (quoting *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993)). Thus, the particular circumstances of fraud must be laid out "before access to the discovery process is granted." *WMX Technologies*, 112 F.3d at 178. In short, the discovery process is not a fishing expedition.

Even assuming *arguendo* that plaintiffs have each individually established standing for their RICO claims, the First Amended Complaint's alleged RICO predicate acts each fail to meet Rule 9(b)'s particularity requirements. Consequently, the plaintiffs have failed to plead a pattern of racketeering activity as required under § 1962(c), and their claim must be dismissed. The Court therefore need not reach the question of whether the plaintiffs have established the existence of a RICO enterprise.

### A. The plaintiffs failed to allege wire fraud (18 U.S.C. § 1343) with sufficient particularity.

Allegations of wire fraud are subject to Rule 9(b) particularity requirements. *See Tel-Phonic Services*, 975 F.2d at 1138. This level of particularity necessarily requires the complaint to specifically identify which defendant made each individual fraudulent representation, and how each of those representations furthered the fraudulent scheme. *FMC Int'l A.G. v. ABB Lummus Global, Inc.*, No. Civ. A. H-04-3896, 2006 WL 213948, at *4 (S.D. Tex. Jan. 25, 2006) ("In the civil RICO context, Rule 9(b) also requires the plaintiffs to allege specifically how *each* act of mail or wire fraud furthered the fraudulent scheme, who caused what to be mailed or wired when, and how the mailing or wiring furthered the fraudulent scheme); *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (holding that plaintiffs alleging wire fraud must identify the "time, place, and content of the mail and wire communications," as well as the "identity of the parties to these communications"). Allegations that fail to distinguish between defendants, and instead attribute fraudulent activity to all defendants collectively, are insufficient under Rule 9(b). *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

As the defendants have pointed out in their 12(b)(6) motion [ECF No. 39], the First Amended Complaint fails to distinguish between the four defendants with respect to each alleged instance of wire fraud. *See* ECF No. 37 at 24-27, ¶50. But without pleading a valid corporate veil-

piercing theory, the plaintiffs cannot simply treat the defendants as a single entity in this way. Rule 9(b) requires the plaintiffs to say which specific defendant made which particular fraudulent statement to which particular plaintiff at what particular time. The plaintiffs' allegations do not meet this standard as they do not distinguish exactly which plaintiffs received which communications from which defendants.

As discussed above, the heightened pleading standards imposed on allegations of fraud serve the valuable purpose of protecting defendants from damaging accusations devoid of merit. Clearly identifying the party responsible for each fraudulent act is a fundamental requirement of Rule 9(b). Instead, after what amounts in essence to four attempts to construct a valid complaint, the plaintiffs' First Amended Complaint merely lists instances of wire communications and vaguely alleges that these instances were used to further the defendants' fraudulent scheme. Such allegations do not rise to the level of particularity demanded by Rule 9(b) and must be deemed insufficient to allege wire fraud as a RICO predicate act.

> B. *The plaintiffs failed to allege violations of 18 U.S.C. § 2314 with sufficient particularity.*

Generally speaking, an alleged violation of § 2314 does not constitute fraud for the purposes of Rule 9(b) *in and of itself*, even when asserted as a RICO predicate act. *Perlman v. Zell*, 938 F. Supp. 1327, 1348 (N.D. Ill. 1996). Thus, when a § 2314 violation for the interstate transportation of *stolen* property serves as a predicate act for a RICO claim, standing alone without allegations of fraudulent acquisition of that property, it need not be pled with Rule 9(b) particularity. *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 777-78 (N.D. Tex. 2008).

But as the plain language demonstrates, violations of § 2314 may indeed sound in fraud when, for instance, the pleadings assert that a defendant has "devised a scheme to artifice or defraud" and induced a person to travel in interstate commerce in furtherance of that scheme. *See*

8

*Wilson v. Arch-Air Freight, Inc.*, Civ. A. No. 93-422, 1995 WL 72776, at *2 (E.D. La. Feb. 17, 1995) (requiring Rule 9(b) particularity in pleading of § 2314 violation involving scheme to defraud). "If the funds involved in the violation of [§§ 2314 and 2315] are alleged to have been fraudulently obtained, then the details of that underlying fraud must be pled with particularity." *Zell*, 938 F. Supp. at 1348 (citing *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 792 (3d Cir. 1984)).

The plaintiffs' allegations of § 2314 violations include (1) the transportation of funds in excess of $5,000 known by the defendants to have been obtained by fraud in interstate commerce, and (2) the defendants' alleged scheme to defraud and subsequent inducement of the plaintiffs to travel in interstate commerce so that they may be defrauded of a sum in excess of $5,000. Each of these allegations is fraud-based within the meaning of Rule 9(b), and the circumstances of that fraud must be pled with particularity.

These allegations fail for the same reasons stated above. Again, the plaintiffs have failed to distinguish between the four defendants, instead vaguely attributing the § 2314 violations to the "Defendants" collectively. The plaintiffs' list of months during which an unidentified number of students were "induced" to travel from one part of the country to another fails to meet the heightened pleading standards imposed by Rule 9(b). Without any language in their First Amended Complaint giving rise to a corporate veil-piercing theory, the plaintiffs' generalized allegations of § 2314 violations by the collective "Defendants" fail to allege the commission of a RICO predicate act for the purposes of § 1962(c).

> *C. Because the plaintiffs failed to plead either RICO predicate act with sufficient particularity, they failed to allege a pattern of racketeering activity, and their § 1962(c) claim must be dismissed.*

As discussed above, the First Amended Complaint fails to allege a pattern of wire fraud or § 2314 violations with sufficient particularity. Consequently, the plaintiffs have failed to plead a pattern of racketeering activity—a required element of a § 1962(c) claim. The claim must therefore be dismissed. The plaintiffs' failure to make such a basic and fundamental distinction between the defendants identified in this suit is unacceptable after what amounts to four failed attempts to state a claim upon which relief may be granted. The Court therefore declines to give the plaintiffs leave yet again to amend their complaint and further multiply the litigation of this claim. Four opportunities to construct a viable complaint are more than enough to serve the interests of justice.

### IV. Because the plaintiffs have failed to allege a pattern of racketeering activity with sufficient particularity, their § 1962(d) conspiracy claim must be dismissed.

Section 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)." 18 U.S.C. § 1962(d). The plaintiffs' second claim alleges that the defendants violated § 1962(d) by conspiring to violate § 1962(a), which prohibits the investment of income derived from a pattern of racketeering activity in an enterprise engaged in activities which affect interstate commerce.

All RICO claims under § 1962 share three common elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995) (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)). The elements of a § 1962(d) claim are "(1) that two or more people agreed to commit a substantive RICO offense and (2) that [the defendants] knew of and agreed to the overall objective of the RICO offense." *North Cypress Medical Center Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015) (quoting *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 239 (5th Cir. 2010)). A RICO conspiracy claim under § 1962(d) may not be sustained if the complaint fails to plead the requisite elements

of an underlying substantive § 1962 violation. *Nolen v. Nucentrix Broadband Networks, Inc.*, 293 F.3d 926, 930 (5th Cir. 2002).

The First Amended Complaint states that the defendants "agreed to market and conduct the AMS programs through a pattern of deceptive behavior, wire fraud, interstate transportation of money obtained by fraud, and inducement of persons to travel across state lines for the purpose of defrauding them, and the use of proceeds from their misconduct to market and sell still further AMS programs." ECF No. 37 at 31, ¶65. As discussed above, the plaintiffs have failed to adequately allege a pattern of racketeering activity through any RICO predicate acts. The absence of this element, which is required in order to state a claim for a violation of § 1962(a), is also fatal to their § 1962(d) claim. Without sufficient allegations of a substantive RICO violation under *either* § 1962(c) or § 1962(a), there can be no conspiracy to violate either section under § 1962(d). The plaintiffs' RICO conspiracy claim is therefore dismissed.

### V. The Court exercises its discretion granted by 28 U.S.C. § 1367(c)(3) by declining to extend jurisdiction over the remaining state-law claims.

As the parties in this case lack complete diversity, the plaintiffs' ability to bring their negligence and negligent misrepresentation claims in federal court is dependent on supplemental jurisdiction under 28 U.S.C. § 1367(a). As outlined above, both RICO claims over which this Court has original jurisdiction are deficient and must be dismissed. This dismissal leaves two state-law claims remaining in the suit. Pursuant to §1367(c), this Court declines to extend jurisdiction over the remaining negligence and negligent misrepresentation claims given that all federal claims have been dismissed.

Federal courts may extend jurisdiction over "all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Jurisdiction over pendent state

claims "lies in considerations of judicial economy, convenience and fairness to litigants. . . ." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996). A district court may decline to exercise supplemental jurisdiction over non-federal claims if it has dismissed all claims over which it has original jurisdiction. § 1367(c)(3). In the Fifth Circuit, the general rule is that a court should decline to exercise jurisdiction over remaining state claims when all federal claims have been dismissed or otherwise eliminated before trial. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

However, if a significant amount of judicial resources have been devoted to the non-federal claims prior to dismissal of all federal claims, the dismissal of those non-federal claims may be an abuse of discretion. *Id; see also Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (holding that the district court abused its discretion by dismissing pendent state claims after the case had been pending for nearly three years, producing over sixteen volumes of record, numerous depositions and discovery disputes, and multiple motions to dismiss claims or grant summary judgment). Conversely, when all federal claims are dismissed at an "early stage" of a lawsuit, the balance of factors outlined in *Gibbs* will generally point toward declining to exercise jurisdiction over the pendent state claims. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988).

While this case has been pending for approximately eighteen months, the activity so far has predominantly concerned incorporating the claims of plaintiffs initially involved in arbitration and the subsequent addition of plaintiffs to the suit. There is no indication that any significant amount of discovery has been conducted, and the Court concludes that this case is indeed still in an early stage as described by the Supreme Court in *Cohill*. The Court thus declines to hear the remaining state law claims.

## Conclusion

For all the reasons stated above, the Court concludes that the plaintiffs have failed to plead sufficient facts in support of either RICO claim over which this Court has original jurisdiction. The Court declines to assert jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3). Therefore, the defendants' Motion to Dismiss [ECF No. 39] will be **GRANTED** and the plaintiffs' case will be dismissed.

A separate order shall issue this date.

Date: June 19, 2018

Royce C. Lamberth
United States District Judge